IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN ALSTON                        :

                                       :

     v.                                :    Civil Action No. DKC 13-0913

                                       :

UNITED COLLECTIONS BUREAU, INC.
                                       :

## MEMORANDUM OPINION

Presently pending and ready for review in this action alleging common law tort of defamation and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201, *et seq.*, are several motions: (1) the motion of Defendant United Collections Bureau, Inc. ("Defendant" or "UCB") to dismiss, or in the alternative, for summary judgment (ECF No. 16); (2) Plaintiff Jonathan Alston's ("Plaintiff") motion to strike (ECF No. 20); and (3) Plaintiff's motion for leave to file a second amended complaint (ECF No. 23). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss, or in the alternative, for summary judgment will be

granted.  Plaintiff's motions to strike and for leave to file a second amended complaint will be denied.

## I.  Background

### A.  Factual Background[1]

Plaintiff, proceeding *pro se*, has sued UCB for damages resulting from UCB allegedly reporting a collection item to three credit reporting agencies - Equifax, Experian, and TransUnion.  According to the first amended complaint, the collection item arose from a debt Plaintiff owed to Prince George's Hospital for personal services.  Plaintiff alleges that the debt was paid in full on June 18, 2007 after his case settled with an insurance company.  (ECF No. 14 ¶ 8).  Plaintiff contends that "UCB reported this account not only despite knowing the account was paid but also knowing the account was false in the sense that it was uncollectible and unenforceable for it was outside the statute of limitations."  (*Id.* ¶ 10).  Plaintiff asserts that he disputed the debt "with the credit bureaus on numerous occasions within the past two years but UCB continued to maliciously instruct the credit bureaus to report this false account." (*Id.* ¶ 11).

According to the first amended complaint, Plaintiff disputed the debt with Equifax in May 2012 and Equifax

---

[1] The facts are drawn from the first amended complaint, the operative complaint here.

2

subsequently forwarded the dispute to UCB for investigation on May 24, 2012. Plaintiff received the investigation results from Equifax on May 24, 2012, which confirmed that the account was correct. (*Id.* ¶ 12). Plaintiff also disputed the account with TransUnion in June 2012, TransUnion referred the dispute to UCB for investigation, and according to Plaintiff, on June 19, 2012, the investigation results stated that the UCB account was deleted. (*Id.* ¶ 13). Finally, Plaintiff disputed the account with Experian in June 2012, Experian forwarded the dispute to UCB for investigation, and like the Equifax dispute, UCB confirmed the account. (*Id.* ¶ 14). Plaintiff asserts that the disputes he filed with TransUnion, Equifax, and Experian all concerned the same debt to Prince George's Hospital, yet UCB's investigation yielded different results to TransUnion (resulting in his account being deleted) from Equifax and Experian.

On July 8, 2012, Plaintiff sent UCB a letter "explaining that he does not have an outstanding balance with Prince George's Hospital." (*Id.* ¶ 15). Plaintiff asserts that he requested that UCB provide proof of the debt, and if UCB had done so, he would have paid the outstanding balance. (*Id.*). In response, Plaintiff received a letter from UCB dated July 17, 2012, in which UCB advised him that "the credit reporting initiated by United Collection Bureau, Inc., with regard to the above referenced account was requested to be removed from your

credit file. Please accept our apology for any inconvenience this error may have caused." (*Id.* ¶ 16; *see also* ECF No. 18-2). Plaintiff also asserts that:

> [i]n correspondence dated December 21, 2012 UCB admitted that it did not perform a reasonable investigation after receiving Mr. Alston's May and June 2012 credit bureau disputes. UCB admitted that it only confirmed that the name, address and social security number matched its files. UCB further admitted it only conducted a reasonable response after receiving Mr. Alston's July 8, 2012 correspondence and found that the account should not have been reported to the credit reporting agencies.

(ECF No. 14 ¶ 17). Plaintiff believes that as a result of the reported debt to Prince George's Hospital, inaccurate credit reports were published to A&H Motors, AT&T Services, Capital One, Flagship Credit Acceptance, Regional Acceptance, Wells Fargo Capital One, and Verizon Communications. (*Id.* ¶ 18).

## B. Procedural Background

On February 5, 2013, Plaintiff commenced this action in the Circuit Court for Prince George's County in Maryland. (ECF No. 1-1). In the complaint, Plaintiff alleged that Defendant violated the FDCPA by reporting false information to TransUnion, Equifax, and Experian. Plaintiff further asserted violations of the FCRA premised on Defendant's alleged failure to investigate the disputed account. Finally, Plaintiff asserted the common law tort of defamation on the basis of UCB's allegedly

intentional and malicious instruction to credit bureaus to report a collection item for a debt that Plaintiff maintains had been satisfied. (*Id.* at 4-6).

Defendant removed the action to this court on March 27, 2013, citing federal question jurisdiction as the jurisdictional basis. (ECF No. 1). Defendant subsequently moved to dismiss on April 1, 2013 (ECF No. 10). Before he opposed the motion, Plaintiff filed a first amended complaint on April 17, 2013, adding a fourth claim for violations of the MCDCA. (ECF No. 14-2). On May 1, 2013, Defendant filed a motion to dismiss Plaintiff's first amended complaint, or in the alternative, for summary judgment. (ECF No. 16). Plaintiff opposed the motion on May 16, 2013 (ECF No. 18), and Defendant replied on June 3, 2013 (ECF No. 19). On June 18, 2013, Plaintiff moved to strike a supplemental affidavit that Defendant submitted with the reply brief and a portion of Defendant's reply brief. (ECF No. 20). Defendant opposed this motion on July 5, 2013 (ECF No. 21), and Plaintiff replied on July 17, 2013 (ECF No. 22). Plaintiff subsequently moved for leave to file a second amended complaint on August 21, 2013, after Defendant refused to consent to the amendment. (ECF No. 23). In the second amended complaint, Plaintiff seeks to add Prince George's Hospital as a second defendant, and to include two additional counts for *respondeat superior* liability and alleged violations of the Maryland

Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.*[2] Defendant opposed this motion on September 4, 2013 (ECF No. 24) and Plaintiff replied on September 23, 2013 (ECF No. 25).

## II.  Standards of Review

### A.  Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the

---

[2] It appears that Plaintiff seeks to assert these two counts only against Prince George's Hospital.

light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

   **B.   Summary Judgment Standard**

   Summary judgment may be entered only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*,

532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

### A.   Defendant's Motion to Dismiss or for Summary Judgment

### 1.   FDCPA Claim (Count I)

Plaintiff alleges that UCB violated various provisions of the FDCPA, which protects consumers from "abusive and deceptive

debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004). UCB moves to dismiss this claim.

The FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). It is well established that the "threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994). The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability. *Spencer v. Henderson-Webb, Inc.*, 81 F.Supp.2d 582, 590-91 (D.Md. 1999).

### a. 15 U.S.C. § 1692e(8)

Plaintiff asserts that UCB violated 15 U.S.C. § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Plaintiff alleges that UCB deceptively reported false information (*e.g.,* that Plaintiff had an outstanding debt with Prince George's Hospital) to TransUnion, Equifax, and Experian to pressure Plaintiff into paying UCB for the "fraudulent account." UCB argues that

Plaintiff fails to state a claim for relief because he fails to show that UCB engaged in any collection activity and "Plaintiff's [c]omplaint fails to allege any facts to support the contention that UCB knew or should have known that the information allegedly reported to the credit bureaus was false." (ECF No. 16-1, at 9). UCB also maintains that Plaintiff's Section 1692e(8) claim is deficient insofar as it fails to show that UCB knew that Plaintiff's debt was allegedly satisfied.

Even if reporting a debt to credit reporting agencies constitutes collection activity, the first amended complaint fails to state a claim under Section 1692e(8). Plaintiff does not provide any factual support for his blanket assertion that "UCB reported this account not only despite knowing the account was paid but also knowing the account was false in the sense that it was uncollectible and unenforceable for it was outside the statute of limitations." (ECF No. 14 ¶ 10). Plaintiff's allegation fails to demonstrate that at the time UCB reported the account to Equifax, Experian, and TransUnion, it knew or should have known that the information was false. *See Shah v. Collecto, Inc.*, No.Civ.A.2004-4059, 2005 WL 2216242, at *10 (D.Md. Sept. 12, 2005) ("[Section 1692e(8)] expressly requires knowledge, and Plaintiff provides no evidence that CCA knew or should have known that the debt was invalid when it initially reported the information to the [credit reporting agencies].").

Furthermore, there is no indication from Plaintiff's first amended complaint that UCB failed to communicate to the credit reporting agencies that Plaintiff disputed the debt. Indeed, Plaintiff asserts that he "disputed the debt with the *credit bureaus* [and not with UCB] on numerous occasions within the past two years." (ECF No. 16 ¶ 11) (emphasis added). Plaintiff has pled no facts indicating that UCB failed to inform TransUnion, Equifax, or Experian that Plaintiff disputed the debt. In fact, according to Plaintiff, after he submitted a dispute directly to UCB for the first time on July 8, 2012 "explaining that he does not have an outstanding balance with Prince George's Hospital," (*Id.* ¶ 15), UCB responded to him on July 17, 2012 indicating that the debt was cancelled. (*Id.* ¶ 16). Notably, Plaintiff does *not* contend that UCB continued to report the debt after receiving Plaintiff's July 8, 2012 dispute. In the opposition, Plaintiff asserts that "[i]t can certainly be inferred that the deletion of the UCB account from the Transunion credit report indicates that UCB knew the debt was false and should not have subsequently been reported to Equifax and Experian." (ECF No. 18, at 4). In order to state a claim, however, the plausibility standard requires "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Plaintiff's contention that UCB knew or should have known that it reported false

information to the credit reporting agencies is speculative at best.  Accordingly, Plaintiff fails sufficiently to allege that UCB violated 15 U.S.C. § 1692e(8).

   **b.    15 U.S.C. § 1692(e)(10)**

   Plaintiff also asserts that UCB violated 15 U.S.C. § 1692e(10).  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Plaintiff must provide factual support bearing on Defendant's purported misconduct under the FDCPA, which Plaintiff fails to do here.  Plaintiff does not assert that he received any correspondence from UCB attempting to collect the allegedly satisfied debt to Prince George's Hospital.  In fact, as Plaintiff alleges in the first amended complaint, the July 17, 2012 correspondence he received from UCB indicated that Plaintiff's account was removed from his credit file.  Moreover, Plaintiff fails to identify how UCB used false representation or deceptive means in an attempt to collect a debt.  *See, e.g, Mavilla v. Absolute Collection Service, Inc.*, No. 13-1170, 2013 WL 4799313, at *4 (4th Cir. Sept. 10, 2013) ("Appellants have failed to identify the exact conduct that violated [15 U.S.C. § 1692e(10)] and similarly have failed to present any evidence in support of the claims.").  Plaintiff's naked assertion that Defendant knew that the debt was false all along considering

12

UCB's July 17, 2012 correspondence to Plaintiff indicating that his account was removed from the credit file (*see* ECF No. 18-2) does not give rise to actionable conduct under the FDCPA. *See Baptise v. Capital One Bank (USA), N.A.*, No. JKB-11-3535, 2012 WL 1657207, at *2 (D.Md. May 10, 2012) (holding that plaintiff's allegations fell short of stating a plausible claim under Section 1692e(10), where she alleged that a law firm "sent her something in writing demanding payment on a debt, which she refers to as 'non-existent'. . . None of these allegations allows an inference that [the law firm] used 'any false, deceptive, or misleading representations or means in connection with the collection of any debt.'").

Finally, Plaintiff's argument that UCB violated Section 1692e(10) by attempting to collect on a time-barred debt is also misplaced. Collection of a time-barred debt is permissible; Section 1692(e)(10) is implicated only when the debt collector goes further ad threatens litigation. *See, e.g., Larsen v. JBC Legal Group, P.C.*, 533 F.Supp.2d 290, 303 (E.D.N.Y. 2008) ("Although it is permissible [under the FDCPA] for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt."); *Goins v. JBC & Assoc., P.C.*, 352 F.Supp.2d 262, 272 (D.Conn. 2005) ("As the statute of limitations would be a complete defense to any suit . . . the threat to bring suit

under such circumstances can at best be described as a 'misleading' representation, in violation of § 1692e [of the FDCPA].").   There is no indication that UCB threatened Plaintiff with litigation regarding the allegedly time-barred debt. Accordingly, Plaintiff fails to state a claim for relief under this provision of the FDCPA as well.

**2.    FCRA Claim (Count II)**

**a.    Reasonableness of UCB's Investigation**

Plaintiff alleges that UCB violated the FCRA by failing to conduct a reasonable investigation after the credit reporting agencies forwarded his dispute to UCB.   Defendant seeks summary judgment on this count.

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (*quoting Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).   The FCRA creates a private right of action allowing injured consumers to recover actual damages caused by negligent violations and both actual and punitive damages for willful noncompliance.   *See Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009); *see also* 15 U.S.C. §§ 1681n, 1681o.

Plaintiff asserts that UCB violated 15 U.S.C. §§ 1681s-2(b)(1)(D) & (E). Section 1681s-2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information. *See* 15 U.S.C. § 1681s-2(b)(1). Furnishers of information typically are "'credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'" *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 n.7 (1st Cir. 2010). As a debt collector, UCB is a furnisher of information under the FCRA. Under Section 1681s-2(b), a furnisher is only required to investigate information it has provided if a consumer reporting agency notifies it that a consumer has contacted the agency and disputed the furnished information. 15 U.S.C. § 1681s-2(b)(1); *Mavilla*, No. 13-1170, 2013 WL 4799313, at *5; *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 784 (W.D.Ky. 2003) ("This means that a furnisher of credit information . . . has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency.") (emphasis in original).

Here, UCB received notification that Plaintiff disputed the debt in May 2012 (from Equifax) and in June 2012 (from TransUnion and Experian). The notices triggered UCB's duty to investigate. Specifically, after receiving disputes, the furnisher must (1) "conduct an investigation with respect to the

disputed information," (2) "review all relevant information provided by the consumer reporting agency," (3) "report the results of the investigation to the consumer reporting agency," and (4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." 15 U.S.C. § 1681s-2(b)(1)(A-D).

The furnisher's investigation must be reasonable "to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). Plaintiff bears the burden of showing the investigation was unreasonable. *See id.*, 357 F.3d at 429-31. Whether a defendant's investigation is reasonable is a factual question normally reserved for trial, but summary judgment is proper if the reasonableness of the defendant's procedures is beyond question and if the plaintiff has failed to adduce evidence that would tend to prove that the investigation was unreasonable. *See, e.g., Jainqing Wu v. Trans Union*, No. AW-03-1290, 2006 WL 4729755, at *8 (D.Md. May 2, 2006); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 826 (7th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has opined that to determine reasonableness, "the cost of verifying the accuracy of the information" should be weighed against "the possible harm of

reporting inaccurate information." *See Johnson*, 357 F.3d at 432.

Plaintiff asserts that UCB failed to fulfill its duties under the FCRA because if Defendant in fact performed a reasonable investigation, it would have discovered that his account could not be verified, especially because UCB removed the account from his credit file after Plaintiff disputed the debt directly to UCB.[3] Plaintiff also premises the FCRA claim on the allegation that UCB "reported the same account differently to the three credit reporting agencies after receiving materially identical disputes from each credit reporting agency." (ECF No. 14 ¶ 26).

Plaintiff fails to raise a genuine dispute of material fact as to whether UCB conducted a reasonable investigation in light of the specific disputes UCB received from the credit reporting agencies. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it

---

[3] The FCRA allows consumers to notify furnishers of disputes directly. *See* 15 U.S.C. § 1681s-2(a)(8). But there is no private cause of action for failure properly to investigate such a dispute. *Id.* § 1681s-2(c)(1). A notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under Section 1681s-2(b). *See, e.g., Gorman*, 584 F.3d at 1154. Here, Plaintiff does not appear to contest - nor could he - the reasonableness of UCB's investigation *after* he sent the July 8, 2012 letter directly to UCB disputing the outstanding debt.

learned about the nature of the dispute from the description in the . . . notice of dispute."). First, UCB conducted two investigations after receiving the disputes in May and June 2012. Defendant submits an affidavit from Kristen Arsenault, UCB's assistant general counsel, outlining the procedures UCB uses to investigate consumer disputes forwarded by credit reporting agencies. Specifically, UCB uses a system called e-OSCAR to receive consumer credit history disputes; e-OSCAR provides UCB with an Automated Credit Dispute Verification ("ACDV") after a consumer disputes an account with a credit reporting agency. (ECF No. 16-2 ¶ 6). Ms. Arsenault explains that UCB does *not* receive the original dispute from the consumer and "the original dispute is not described in the ACDV beyond the applicable dispute code." (*Id.*).[4] She further attests that

---

[4] In the opposition, Plaintiff challenges the admissibility of the affidavit from UCB's assistant general counsel on the ground that Ms. Arsenault does not have personal knowledge of how Plaintiff's specific dispute was processed. (ECF No. 18, at 7). This argument is unavailing. Even accepting Plaintiff's position that Ms. Arsenault did not personally take part in the applicable records' creation, "[i]t is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008). By her declaration, Ms. Arsenault established her familiarity with the process by which UCB investigates information after it receives disputes from consumer reporting agencies. (*See* ECF No. 16-2, Arsenault's Affidavit, attesting that she has "personal knowledge of the matters set forth [in the affidavit].")). Her declaration is made with the requisite

"[t]he ACDV does not provide UCB with the name of the Credit Reporting Agency with whom the consumer originally disputed the debt. Moreover, when the same dispute is made to multiple Credit Reporting Agencies on the same day, only one (1) comprehensive ACDV is provided to UCB." (*Id.* ¶ 7). Plaintiff disputed the information with Equifax in May 2012, and UCB received an ACDV from e-OSCAR regarding this dispute on May 24, 2012. (*Id.* ¶ 11). Ms. Arsenault attests that "[t]he May 24 ACDV was coded as: 'Dispute Code 1: 001: Not his/hers.' No additional information was provided by e-OSCAR in connection with the May 24 ACDV." (*Id.*). Defendant asserts that after receiving a dispute such as the May 24, 2012 dispute that was forwarded from Equifax, "UCB is required to conduct an investigation to verify the name, address and Social Security Number of the consumer." (*Id.* ¶ 12). After verifying Plaintiff's name, address, and social security number, UCB reported the results of its investigation to e-OSCAR on May 24, 2012. As to Plaintiff's dispute with TransUnion and Experian in June 2012, UCB received the consolidated dispute on June 19, 2012. (*Id.* ¶ 14). Ms. Arsenault declares that the June 19 ACDV was coded as "Dispute Code 1: 012: Claims paid the original

personal knowledge and Plaintiff's objection to its contents lacks merit. *See, e.g., Long v. Roy*, No. JKB-12-683, 2012 WL 3059549, at *4 (D.Md. July 25, 2012) (accepting affidavit from UCB's assistant general counsel on summary judgment in an FCRA case).

creditor before collection status or paid before charge-off."
(*Id.*). UCB asserts that after receiving this dispute, it is
required to verify the account status, payment rating, current
balance, amount past due and payment history profile. UCB
attests that it verified that the information furnished to the
credit reporting agencies was accurate and reported the results
of its investigation on e-OSCAR on June 19, 2012. (*Id.* ¶ 16).

With respect to each dispute, UCB reviewed all of the
information provided on e-OSCAR. It appears that Plaintiff
believes UCB's investigation was "superficial" and that UCB
should have recognized that he disputed the same account with
Equifax, Experian, and TransUnion. Thus, Plaintiff maintains
that his account should have been deleted with all three credit
reporting agencies, not only with TransUnion.

Judge Bredar's reasoning in *Beachley v. PNC Bank, Nat.
Ass'n* is instructive on this point. 2011 WL 3705239, at *3
(D.Md. Aug. 22, 2011). The opinion notes that "[i]n a perfect
world, perhaps, a furnisher of credit information should
understand that a dispute as to responsibility for the account
is the same as a dispute that the account was discharged in
bankruptcy, but the FCRA does not require perfection, only a
reasonable response. PNC's responses to the September 2008
disputes with TransUnion and Equifax were reasonable *based on*

20

*the information the [credit reporting agencies] gave to PNC.*"
*Id.* (emphasis added).

Federal appellate courts have likewise recognized this principle that the reasonableness of the investigation undertaken by furnishers depends on the information provided to them. For instance, the Fourth Circuit has held that the nature and specificity of the information provided by consumer reporting agencies to the furnisher may affect the scope of the investigation required of the furnisher. *Johnson*, 357 F.3d at 431. Although the Fourth Circuit found that the reasonableness of the furnisher's investigation created a triable question where the furnisher's investigation was limited to confirming the name and address listed on the ACDV and noting that a code indicated that plaintiff was the sole responsible party on the account, the furnisher's inquiry occurred after it had been notified by the consumer reporting agency "of the *specific nature* of [plaintiff's] dispute – namely, [plaintiff's] assertion that she was not a co-obligor on the account." *Id.* (emphasis added). Thus, to the extent Plaintiff relies on *Johnson* for the broad proposition that verifying the consumer's name, address, and social security number creates a genuine disputed factual issue as to the reasonableness of a given investigation under the FCRA in all circumstances, such reliance is misplaced.

Indeed, the court in *Chiang v. Verizon New England Inc.*, 595 F.3d at 38, reasoned that "a more limited investigation may be appropriate when [consumer reporting agencies] provide the furnisher with vague or cursory information about a consumer's dispute. The statute is clear that the investigation is directed to the information provided by the [consumer reporting agency]." *See also* 15 U.S.C. § 1681s-2(b)(1)(B) (requiring a furnisher to review "all relevant information" provided to it by a consumer reporting agency). In *Chiang*, the First Circuit concluded that the furnisher conducted a reasonable investigation, finding significant that the furnisher "received only *cursory* notices from the [consumer reporting agencies,] which were generalized and vague about the nature of plaintiff's disputes. The summary reports in [the furnisher's] online filing system indicate that the information reported largely consisted of broad, non-specific statements." *Id.* at 40. The Seventh Circuit reached a similar conclusion in *Westra v. Credit Control of Pinellas*, 409 F.3d at 826, holding that the furnisher's verification of plaintiff's name, address, and date of birth constituted a reasonable investigation under the FCRA "given the scant information it received regarding the nature of [plaintiff's] dispute" in CDV from TransUnion. The court reasoned that a more thorough investigation may have been warranted had TransUnion provided better notice of the nature of

the dispute, but given the information provided, defendant's investigation was reasonable under the FCRA.

After reviewing the information provided on e-OSCAR, UCB reported the results of the investigation to the respective credit reporting agency (*e.g.,* Equifax, Experian, and TransUnion), which subsequently relayed the information to Plaintiff as prescribed by Section 1681s-2(b)(1)(C). "[T]he investigation is meant to determine if the disputed information is 'incomplete or inaccurate.'" *Chiang*, 595 F.3d at 36. The incompleteness must be such as to make the furnished information misleading in a material sense. *See Saunders*, 526 F.3d at 148 (holding that a furnisher may be held liable under Section 1681s-2(b) for failure to report information as disputed when the omission is "misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ] effect") (alteration in original) (internal quotation marks omitted). Here, based on the information provided on e-OSCAR by the respective credit reporting agency and its subsequent investigation, UCB found that the information furnished regarding Plaintiff's debt was accurate. (*See* ECF No. 16-2 ¶ 16).

Plaintiff alleges that UCB also violated 15 U.S.C. § 1681s-2(b)(1)(E), which provides that:

> if an item of information disputed by a
> consumer is found to be inaccurate or
> incomplete or cannot be verified after any
> reinvestigation under paragraph (1), for
> purposes of reporting to a consumer
> reporting agency only, as appropriate, based
> on the results of the reinvestigation
> promptly –
>
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii)permanently block the reporting of that
> item of information.

15 U.S.C. § 1681s-2(b)(1)(E). Because UCB's investigation did not find that the information disputed (as reported on e-OSCAR) was incomplete or inaccurate, Section 1681s-2(b)(1)(E) was never triggered. *See, e.g., Chiang*, 595 F.3d at 37-38 (holding that summary judgment was appropriate on an FCRA claim, where plaintiff failed to show any actual inaccuracies that furnisher could have found through a reasonable investigation).

Plaintiff asserts in the opposition that "a reasonable jury can find that UCB was negligent in its investigation if it did not contact the original creditor to determine if the debt had been paid." (ECF No. 18, at 9). First, UCB maintains that "[i]n investigating the June 19, 2012 [d]ispute, UCB verified with the original creditor that the information furnished was accurate." (ECF No. 19-2 ¶ 6). In any event, any failure by UCB to confirm the accuracy of the information with the creditor and reliance on its own records, would not, in and of itself, necessarily create a genuine dispute as to the reasonableness of

the investigation. The court in *Westra*, 409 F.3d at 827, rejected a similar argument to the one Plaintiff lodges here. Specifically, in that case, plaintiff argued that the furnisher should have contacted him directly about the disputed account, but the court reasoned that "[w]hile that would have undoubtedly helped matters in the instant case, requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA." Similarly, the FCRA does not impose upon furnishers a duty to contact creditors for verification every time a consumer reporting agency forwards a dispute. Thus, even disregarding Ms. Arsenault's supplemental affidavit stating that UCB verified the accuracy of the information with the original creditor, UCB's investigation was not *per se* unreasonable. Similarly, the fact that UCB reported its results on e-OSCAR in response to the June 2012 disputes Plaintiff submitted to Experian and TransUnion, and that these credit reporting agencies allegedly reported conflicting outcomes on the same account also does not create a genuine dispute of material fact as to whether UCB violated the FCRA. *See, e.g., Beachley*, No. JKB-10-1774, 2011 WL 3705239, at *4 ("[plaintiff] has made a bare statement in her opposition to [defendant's] motion to the effect that [defendant] did not notify other [consumer reporting agencies] of the outcome of its investigation, but has not supported that

statement with any evidence. Her assertion, with nothing more, is not sufficient to survive a motion for summary judgment."). UCB reported the same information to two credit reporting agencies and cannot be responsible to determine what they do with the information or where they go beyond UCB's response.

Based on the foregoing, summary judgment is appropriate on Plaintiff's FCRA claim.

**b. Discovery**

Plaintiff also argues that granting summary judgment in favor of Defendant would be premature because he needs time to conduct discovery. "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (*quoting Evans v. Techs. Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Although Plaintiff is proceeding *pro se*, he appears familiar with Rule 56(f), as he has submitted an affidavit with the opposition in which he delineates reasons for seeking discovery.

A request for discovery will not be granted if the party merely wishes to conduct a "fishing expedition" in search for evidence that may be helpful. *Morrow v. Farell*, 187 F.Supp.2d

548, 551 (D.Md. 2002). In addition to the specificity requirement, a party must present reasons why it cannot put forth the necessary opposing evidence, *see Pine Ride Coal Co. v. Local 8377, United Mine Workers of Am.*, 187 F.3d 415, 421-22 (4th Cir. 1999), and must establish that the desired evidence could be sufficient to create a genuine issue of material fact, *see McLaughlin v. Murphy*, 372 F.Supp.2d 465, 470 (D.Md. 2004).

A denial of Rule 56(f) motion is generally appropriate "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Board of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even viewing Plaintiff's pleading liberally, he has not demonstrated a need for discovery.

Plaintiff first asserts that he needs "an opportunity to conduct discovery to determine why UCB was still reporting the account five years after the account was paid." (ECF No. 18-1 ¶ 8). This information would not create a genuine issue of material fact sufficient to survive summary judgment because it would not affect the determination of whether UCB's investigation under Section 1681s-b(2) was reasonable. Plaintiff next provides that his "discovery requests pertaining to United Collection Bureau, Inc.'s reporting of the account

27

will determine whether it performed a reasonable investigation of the disputed account after receiving [Plaintiff's] disputes from the credit reporting agencies." (ECF No. 18-1 ¶ 10). He argues that he needs discovery "to obtain facts pertaining to what information was contained in the ACDV forwarded to UCB by the credit reporting agencies." (ECF No. 18, at 8). Similarly, Plaintiff asserts that he needs "an opportunity to subpoena documents from Equifax, Experian and TransUnion to determine what information was forwarded to United Collection Bureau, Inc. in regards to [his] disputes." (ECF No. 18-1 ¶ 12). Ms. Arsenault submitted an affidavit testifying about the information UCB received on e-OSCAR regarding Plaintiff's disputes. Plaintiff essentially wants to investigate the veracity of the information provided in Ms. Arsenault's affidavit and the procedures she outlined as to how UCB investigated the May and June 2012 disputes from Plaintiff. Mere speculation that the data might not be credible is insufficient to survive summary judgment, and Plaintiff fails to provide any evidence that UCB's credibility is questionable. *See Korotki v. Attorney Servs. Corp.*, 931 F.Supp. 1269, 1279 (D.Md. 1996) (a request to stay based on a challenge to the evidence in the record without any showing that the evidence lacks credibility is insufficient); *Wilson v. Clancy*, 747 F.Supp. 1154, 1158 (D.Md. 1990) (stating that a challenge to the

credibility of evidence does not generate a "triable issue unless plaintiff produces competent evidence that contradicts [the evidence]"). Plaintiff fails to show how discovery could create a genuine issue of material fact. *See Shah*, No. 2004-4059, 2005 WL 2216242, at *16 ("Plaintiff provides no evidence that a request for production would generate anything but the identical collector notes that Plaintiff already has access to, or that deposing CCA's affiant, John Burns, would result in testimony contrary to that contained in his affidavit."). Finally, Plaintiff asserts that his "discovery requests pertaining to United Collection Bureau, Inc.'s reporting of the account will determine whether it was maliciously or recklessly reporting the account." (ECF No. 18-1 ¶ 9). Plaintiff does not provide any reason why this would create a genuine issue of material fact or would not be duplicative of information already on the record, such as information contained in Ms. Arsenault's affidavit.

Based on the foregoing, Plaintiff's request for discovery will be denied.

### 3. Defamation Claim (Count III)

Plaintiff also asserts a cause of action for defamation. Section 1681h(e) of the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any

person who furnishes information to a consumer reporting agency
. . . except as to false information furnished with malice or
willful intent to injure such consumer." 15 U.S.C. § 1681h(e);
*see also Spencer*, 81 F.Supp.2d at 597 (FCRA provides qualified
immunity from state law claims unless defendant acted with
malice or willful intent to injure) (internal citations
omitted).[5]  Section 1681h(e) is implicated because Plaintiff's
defamation claim involves "the reporting of information," and is
brought against a "person who furnished information to a
consumer reporting agency" (*e.g.,* Experian, Equifax, and
TransUnion).  *See Spencer*, 81 F.Supp.2d at 597.  This section
appears to exempt certain state law tort claims – those alleging
falsity and malice – from the preemptive reach of the FCRA.

Plaintiff has not pled sufficient facts to show that UCB
acted with malice or willful intent to injure.  To show malice,
Plaintiff needed to plead that UCB acted with reckless disregard
for the truth or falsity of the information it was reporting,
which requires a showing that UCB acted with a high degree of
awareness of probable falsity or had serious doubts as to its
veracity.  *See Schelhaus v. Sears Holding Corp.*, 2009 WL
4728989, at *4 (D.Md. Dec. 3, 2009) (dismissing defamation claim

---

[5]  Section 1681h(e) was intended to govern preemption of
common-law claims while Section 1681t(b) was intended to govern
preemption of state statutory claims.  *See Beuster v. Equifax
Information Servs.*, 435 F.Supp.2d 471, 474-479 (D.Md. 2006).

under Rule 12(b)(6) as preempted by the FCRA; "[u]ltimately, Plaintiff failed to plead facts sufficient to overcome the preemptive effect[sic] of the FCRA."). The first amended complaint contains no factual support for Plaintiff's conclusory averment that "UCB intentionally and maliciously instructed the credit bureaus to report publicly that Plaintiff had a collection account" when it knew the reporting was false. (ECF No. 14 ¶ 33). From the allegations in the complaint, there is no indication that UCB knew the information it was allegedly reporting regarding Plaintiff's debt was false. Plaintiff argues that UCB's later removal of the account from Plaintiff's credit file following Plaintiff's July 8, 2012 dispute to UCB evidences the falsity of UCB's prior reporting. This sequence of events is not sufficient to allege malice and escape the FCRA's preemptive reach. As Judge Motz noted, "[a] showing of malice cannot be made by proving a lack of certainty; malice requires facts indicating serious doubts as to veracity." *Schelhaus*, 2009 WL 4728989, at *4. Plaintiff's defamation claim lacks this showing. Accordingly, Plaintiff's defamation claim will be dismissed.

### 4. MCDCA Claim (Count IV)

UCB asserts that the MCDCA count should be dismissed because Plaintiff's first amended complaint fails to make the necessary allegations for a *prima facie* MCDCA claim. The MCDCA

"'prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt.'" *Piotrwoski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *9 (D.Md. Jan. 22, 2013) (*quoting Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 731-32 (D.Md. 2011)); Md. Code Ann., Com. Law § 14-202. Plaintiff alleges that UCB violated Section 14-202(3) of the MCDCA by disclosing derogatory information to Equifax, Experian, and TransUnion despite knowing that Plaintiff did not owe a debt to Prince George's Hospital and this negatively affected Plaintiff's creditworthiness. (ECF No. 14 ¶ 39). Section 202-(3) prohibits a debt collector – in collecting or attempting to collect an alleged debt – to "disclose or threaten to disclose information which affects the debtor's reputation for creditworthiness with knowledge that the information is false."

Even assuming Plaintiff has satisfied the threshold showing that the prohibited conduct occurred in an attempt to collect a debt, he fails to include any factual grounding for the conjecture that UCB knew that it reported false information to TransUnion, Experian, and Equifax. *See Shah*, 2005 WL 2216242, at *11 ("[p]laintiff fails to point to any evidence to show that CCA had *any reason* to doubt the validity of the debt when it first attempted to collect the debt and when it initially reported the debt to the CRAs. Plaintiff therefore fails to

establish the requisite knowledge component with regard to CCA's initial actions.") (emphasis in original). Plaintiff's naked assertion that his July 8, 2012 correspondence to UCB in which he "called UCB's bluff" prompted UCB to stop reporting the account to the credit bureaus does not suggest that they knew their earlier reporting was false. *Akalwadi*, 336 F.Supp.2d at 511 ("[u]nlike the FDCPA, the MCDCA is not a strict liability statute"). Plaintiff asserts that UCB "immediately *ceased* reporting the account to the credit bureaus after receiving Mr. Alston's July 8, 2012 correspondence because it knew the reporting was false." (ECF No. 14 ¶ 41) (emphasis added). In fact, this supports Defendant's position that UCB *stopped* reporting the account to the credit bureaus after Defendant disputed the accuracy of the information reported. To trigger liability under Section 14-202(3), Plaintiff must allege facts to show some knowledge component with regard to UCB's actions. *Akalwadi*, 336 F.Supp.2d at 511. Plaintiff has not done that here. *See, e.g., Robinson v. Greystone Alliance, LLC*, No. BPG-10-3658, 2011 WL 2601573, at *7 (D.Md. June 29, 2011) (plaintiff failed to point to any evidence that a collection agency knew that the information was false or acted with reckless disregard as to its falsity at the time of disclosure); *Spencer*, 81 F.Supp.2d at 595 ("[D]efendants can be found liable under paragraphs (3) or (8) of the MCDCA for disclosing information or

33

threatening to enforce a right with actual knowledge or reckless disregard as to the falsity of the information or the existence of the right.").

Moreover, Plaintiff's allegation that UCB tried to collect on a time-barred debt also does not save his MCDCA claim, as Plaintiff has alleged no facts to show that UCB possessed actual knowledge that the debt was time-barred at the time it reported Plaintiff's account to the three credit bureaus. *See, e.g., Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 732 (D.Md. 2011) (the MCDCA requires that the debt collector have actual knowledge or have acted with reckless disregard that the right it was trying to enforce did not exist).

Based on the foregoing, Plaintiff's MCDCA claim also warrants dismissal.

**B.   Plaintiff's Motion to Strike**

Plaintiff has moved to strike two items: (1) the supplemental affidavit of UCB's Assistant General Counsel Kristen Arsenault attached to Defendant's reply to Plaintiff's opposition; and (2) a portion of UCB's reply brief referencing Ms. Arsenault's knowledge to testify about UCB's business records.

Federal Rule of Civil Procedure 12(f) is the only procedural rule addressing motions to strike, and it states that a court may, on its own or on motion made by a party, "strike

from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added); *see also McNair v. Monsantro Co.*, 279 F.Supp.2d 1290, 1298 (M.D.Ga. 2003). Per Rule 7(a), pleadings include only the complaint, the answer to a complaint, counterclaim, or crossclaim, and - if permitted by the court - the reply to an answer. Thus, "'[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.'" *Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D.Ala. 1999) (*citing* 2 James Moore *et al., Moore's Federal Practice* § 12.37[2] (3d ed. 1999)). Here, Plaintiff seeks to strike portions of both a reply brief and a supplemental affidavit UCB filed, neither of which constitutes a pleading under Rule 7(a). Plaintiff's motion to strike these items is, therefore, procedurally improper and will be denied.

When addressing such procedurally improper motions to strike, however, courts have long recognized that inadmissible evidence identified by the moving party should be disregarded, although not stricken, when resolving other pending motions. *E.g., McNair*, 279 F.Supp.2d at 1298; *Lombard v. MCI Telecomms. Corp.*, 13 F.Supp.2d 621, 625 (N.D.Ohio 1998). Here, Plaintiff asserts that Ms. Arsenault's supplemental affidavit should be stricken because she attests new information in a reply brief. Plaintiff further contends that Page 14 of Defendant's reply

brief in which UCB argues that Ms. Arsenault is competent to testify about UCB's business records should also be stricken. Specifically, Plaintiff seems to think that Defendant is asserting – for the first time in its reply brief – that Ms. Arsenault personally "handled the actual credit report dispute" (ECF No. 20, at 1) and that UCB verified the information furnished to the credit reporting agencies with the original creditor. Alternatively, Plaintiff seeks leave to submit a surreply. (ECF No. 20, at 2).

Plaintiff's objections to the supplemental affidavit and a portion of Defendant's reply brief will be denied. First, it appears that Defendant initially argued in its motion to dismiss that it verified with the original creditor that the information furnished to the credit reporting agencies was accurate. (*See* ECF No. 16-1, at 18). In any event, as discussed *supra*, whether UCB verified the accuracy of the information furnished with the original creditor is not outcome determinative on the issue of the reasonableness of UCB's investigation.

Moreover, in her original affidavit, Ms. Arsenault testified regarding her personal knowledge of the items set forth in her affidavit. *See, e.g., ADF MidAtlantic, LLC v. Klein Enterprises, LLC*, WMN-13-559, 2013 WL 6012971, at *5 (D.Md. Nov. 12, 2013) (denying motion to strike affidavit, where the initial affidavit lacked indication that the affiant had

personal knowledge, and plaintiff then submitted a second affidavit in which affiant averred that the statements he made in the first affidavit were based on his personal knowledge). But even accepting as true Plaintiff's position in the opposition that Ms. Arsenault did not have personal knowledge of his specific dispute in the sense that she did not personally review the applicable records, as stated *supra*, "[i]t is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge . . . and affidavits sworn by such employees constitute appropriate summary judgment evidence." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008). By her affidavit, Ms. Arsenault established her familiarity with the process by which UCB investigates disputes. Thus, even the failure of Ms. Arsenault to personally handle Plaintiff's dispute would not undermine her ability to testify because as assistant general counsel to UCB, she is familiar with its business practices.

Furthermore, as Judge Williams noted in *Fontell v. MCGEO UFCW Local 1994*, AW-09-2526, 2010 WL 3086498, at *14 (D.Md. Aug. 6, 2010), defendants are allowed to reply to counter-points made by plaintiff in the opposition – this is "the entire purpose of a reply." Here, UCB's argument in its reply brief regarding Ms. Arsenault's handling of Plaintiff's disputes and the supplemental affidavit from Ms. Arsenault testifying that UCB

verified the accuracy of the information with the original creditor are not new arguments, but merely responses to Plaintiff's challenges in the opposition. Moreover, UCB originally made these arguments in its brief supporting the motion to dismiss, or in the alternative, for summary judgment.

Accordingly, Plaintiff's motion to strike and request to file a surreply will be denied.

### C. Motion for Leave to File a Second Amended Complaint

On August 21, 2013, Plaintiff filed a motion for leave to file a second amended complaint, seeking to add Prince George's Hospital as a defendant in this action and to raise additional causes of action for *respondeat superior* liability and MCPA violations. (ECF No. 23).

Leave to amend the complaint should be denied where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (*quoting Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). "An amendment is futile when the proposed amendment is clearly insufficient on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin v. Blom*, Civ. No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012).

Based on the facts presented, Plaintiff will not be permitted to amend the complaint because an amendment would be futile. As discussed *supra*, Plaintiff fails to state a claim for relief under the FDCPA and MCDCA. Plaintiff's MCPA claim in the Second Amended Complaint is expressly predicated only on the alleged violation of the MCDCA. (*See* ECF No. 23-3, at 8). "One of the 'unfair or deceptive trade practices' specifically enumerated and prohibited by the [MCPA] is a violation of the MCDCA." Md. Code Ann., Com. Law § 13-301(14)(iii). Because Plaintiff fails to plead a *prima facie* MCDCA claim, however, his MCPA claim cannot survive. Thus, granting leave for Plaintiff to amend the complaint to add a deficient claim would be futile. Similarly, Plaintiff's *respondeat superior* claim appears to be premised, at least partially, on alleged violations of the MCPA. Specifically, Plaintiff asserts that "PG Hospital is therefore liable to Mr. Alston through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of the Maryland Consumer Protection Act by UCB and its collection employees in their attempts to collect this alleged debt from Mr. Alston." (*Id.* ¶ 23). To the extent Plaintiff relies on the MCPA claim to assert *respondeat superior* liability, this claim fails. In any event, because none of Plaintiff's claims survive dismissal, allowing Plaintiff to

amend the complaint to add a claim for *respondeat superior* liability would be futile.

Furthermore, allowing Plaintiff to add Prince George's Hospital as a second defendant would likewise be futile. First, Plaintiff does not appear to assert the FDCPA claim against the Hospital - nor could he - because "[a]s a general matter, [c]reditors are not subject to the FDCPA." *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2$^d$ Cir. 1998); *see* 15 U.S.C. § 1692(a)(6). It is well-settled law that creditors are not debt collectors and are statutorily exempt from liability under the FDCPA. *Scott v. Wells Fargo Home Mortgage Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003), *aff'd,* 67 F.App'x 238 (4th Cir. 2003). Plaintiff's FCRA claim is premised on violations of Section 1681s-2(b)(1); it does not appear that Prince George's Hospital qualifies as a 'furnisher of information' under the FCRA to trigger liability under this section. Moreover, there are no allegations in the complaint that Plaintiff disputed the debt with Prince George's Hospital or that any such dispute was forwarded to Prince George's Hospital for investigation. Furthermore, Plaintiff's defamation claim warrants dismissal because it is preempted by the FCRA; accordingly, this claim against Prince George's Hospital would also be futile.

Based on the foregoing, Plaintiff's motion for leave to file a second amended complaint will be denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff's FDCPA, MCDCA, and defamation claims will be dismissed. Summary judgment in favor of Defendant will be granted as to Plaintiff's FCRA claim. Plaintiff's request for discovery will be denied. Plaintiff's motion to strike will be denied. Plaintiff's motion for leave to file a second amended complaint will also be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
